UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED
JUN 27 2014
MICHAEL J. ROEMER, CLERK
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NY

CHARLES LACEY,

                    Plaintiff,

          v.

YATES COUNTY, YATES COUNTY SHERIFF
RONALD SPIKE, YATES COUNTY
SHERIFF'S INVESTIGATOR MICHAEL
CHRISTENSEN, YATES COUNTY
LIEUTENANT SOTIR, Individually and in their
Official Capacities, YATES COUNTY DISTRICT
ATTORNEY JASON COOK, YATES COUNTY
ASSISTANT DISTRICT ATTORNEY
ADRIENNE MUIA, Individually and in Their
Official Capacities,

                    Defendants.

**DECISION AND ORDER**
12-CV-06100 EAW

## <u>INTRODUCTION</u>

This action arises out of a 2009 incident in which a neighbor alleged that Plaintiff

Charles Lacey assaulted him with a baseball bat.  A grand jury indicted Plaintiff for

felony assault and menacing in the second degree.  Plaintiff was subsequently acquitted.

Plaintiff then commenced this action alleging civil rights violations against Yates County

and its various law enforcement officials who were involved with the investigation and

subsequent prosecution of Plaintiff.  Defendants have moved to dismiss the complaint in

its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  For the

reasons set forth below, Defendants' motion is granted and the complaint is dismissed.

## BACKGROUND

### I.      The Incident, the Investigation, and the Prosecution

Plaintiff alleges that he suffers from a disability that limits his mobility so that he walks with leg braces and uses a wheelchair. (Dkt. 1 at ¶ 17). Plaintiff further alleges that on October 22, 2009, he was involved in a verbal altercation with a neighbor, William J. Barry ("Barry"). (*Id*. at ¶ 19).

The next day, Defendant Yates County Sheriff's Investigator Michael Christensen ("Investigator Christensen") allegedly came to Plaintiff's home to investigate a complaint that Plaintiff assaulted Barry. (*Id*. at ¶ 28). According to Plaintiff, Investigator Christensen yelled at Plaintiff that he knew that Plaintiff "did it," that Plaintiff had broken Barry's arm, and that Plaintiff was going to jail. (*Id*. at ¶ 30). Plaintiff complains that Investigator Christensen should have questioned Barry's version of events, particularly in view of Plaintiff's disability and the prior history of problems between Plaintiff and Barry. (*Id*. at ¶¶ 29-34).

Within hours after being confronted by Investigator Christensen, Plaintiff alleges that he and his wife complained to Defendant Yates County Sheriff's Lieutenant Sotir ("Lieutenant Sotir") about the manner in which Investigator Christensen was conducting his investigation. (*Id*. at ¶¶ 35, 36). Lieutenant Sotir purportedly told Plaintiff that he would make inquiries with Investigator Christensen, but when Plaintiff contacted Lieutenant Sotir for an update one hour later, Lieutenant Sotir told Plaintiff that he should call Investigator Christensen. (*Id*. at ¶¶ 37, 38). Later that same afternoon, Investigator Christensen allegedly spoke to Plaintiff's spouse and stated that Plaintiff should appear in

Middlesex Town Court and that Plaintiff would be released on his own recognizance. (*Id*. at ¶ 39).  Plaintiff appeared in Middlesex Town Court that evening where he was charged with a misdemeanor.  (*Id*. at ¶¶ 40, 41).  On November 26, 2009, Plaintiff appeared in Potter Town Court and pleaded not guilty to the charges.  (*Id*. at ¶ 42).

At some point in 2010, a grand jury was convened and indicted Plaintiff for felony assault and menacing in the second degree.  (*Id*. at ¶ 45).  Investigator Christensen allegedly testified before the grand jury that he had spoken with Barry who "explained to [him] the circumstances that occurred."  (*Id*. at ¶ 46).  Plaintiff alleges that Investigator Christensen testified about two bruises on Barry's leg, but he did not mention a broken arm.  (*Id*. at ¶ 47).  Barry allegedly testified before the grand jury that Plaintiff came running towards him with a baseball bat in his hands.  (*Id*. at ¶ 48).

During the course of the prosecution of Plaintiff, the Yates County District Attorney's Office purportedly requested, on January 25, 2011, all medical documents regarding Plaintiff's disability.  (*Id*. at ¶ 50).  The District Attorney's Office allegedly received voluminous documentation of Plaintiff's disability demonstrating that he could not have committed the alleged assault against Barry.  (*Id*. at ¶¶ 51-53).  The District Attorney's Office allegedly ignored this information.  (*Id*. at ¶ 53).

In February 2011, photos purporting to depict Barry's arm injury allegedly surfaced for the first time.  (*Id*. at ¶ 57).  Plaintiff alleges that Barry had not previously claimed to have an arm injury (*id*. at ¶ 56), although this allegation contradicts Plaintiff's allegation that Investigator Christensen accused Plaintiff of breaking Barry's arm when he confronted him the day after the incident.  (*Id*. at ¶ 30).

Plaintiff alleges that on March 1, 2011, "Claimant was found not guilty on both counts and the charges were dismissed in his favor." (*Id.* at ¶ 69).

## II.    Procedural History

On February 24, 2012, Plaintiff commenced the present litigation.   (Dkt. 1). Plaintiff's complaint purports to assert seven causes of action:  (1) a first cause of action against all Defendants alleging that they violated 42 U.S.C. § 1983 by falsely arresting and imprisoning Plaintiff and maliciously prosecuting him in violation of his constitutional rights under the Fourth and Fourteenth Amendments; (2) a second cause of action against Defendant Yates County Sheriff Ronald Spike ("Sheriff Spike") for alleged supervisory liability under 42 U.S.C. § 1983;  (3) a third cause of action against Investigator Christensen for allegedly depriving Plaintiff of his liberty without due process of law in violation of 42 U.S.C. § 1983; (4) a fourth cause of action alleging that the County of Yates is liable for the purported wrongful actions of its final policymakers in violation of 42 U.S.C. § 1983; (5) a fifth cause of action alleging that Plaintiff was retaliated against in violation of his First Amendment rights for having made a complaint against Investigator Christensen; and (6) sixth and seventh causes of action against Investigator Christensen alleging that he intentionally, recklessly and negligently caused Plaintiff to suffer emotional distress.

On May 25, 2012, Defendants filed a motion to dismiss. (Dkt. 5). On July 18, 2012, Plaintiff filed opposition papers to the motion through his counsel.[1] (Dkt. 10). Thereafter, on February 21, 2014, this case was transferred to the undersigned (Dkt. 13), with no decision having been rendered concerning the pending motion.

## DISCUSSION

### I.    Legal Standard

In considering a motion to dismiss, a court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). A court should consider the motion "'accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[1]    Plaintiff was represented by counsel at the time of the filing of his complaint and opposition submitted in response to the motion to dismiss. Plaintiff's counsel was subsequently permitted to withdraw due to her suspension. (Dkt. 12).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (internal quotation marks omitted).

As a threshold matter, the Court notes that Defendants attach and rely, in part, upon the transcript of a hearing held pursuant to section 50-h of the New York General Municipal Law in support of their motion to dismiss the complaint. (*See* Dkt. 5-3). Generally speaking, it is inappropriate to rely upon materials that are outside the four corners of the complaint on a motion to dismiss. *See Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000) (finding reversible error where the district court relied on material outside the pleadings on a motion to dismiss); *see also Peone v. Cnty. of Ontario,* No. 12-CV-6012 CJS, 2013 WL 775358, at *1 (W.D.N.Y. Feb 28, 2013) ("In general, the Court would not consider a 50–h hearing transcript on a 12(b)(6) motion."); *Aguilera v. Cnty. of Nassau*, 425 F. Supp. 2d 320, 323 (E.D.N.Y. 2006) (declining to consider 50-h transcript that was not attached to or incorporated by reference into the complaint); *Fontanez v. Skepple*, No. 12-CIV-1582 (ER), 2013 WL 842600, at *3 (S.D.N.Y. Mar. 6, 2013), *aff'd*, No. 13-1301-CV, 2014 WL 1687794 (2d Cir. Apr. 30, 2014) (declining to consider 50-h testimony upon which only defendant relied).   Defendants have offered no

- 6 -

argument that the 50-h hearing transcript is somehow incorporated by reference into the complaint, nor have they articulated any other reason why it should be considered by the Court at this stage of the litigation. As such, the Court has confined its analysis to the facts alleged in the complaint.

## II.    Statute of Limitations

Defendants argue that Plaintiff's claim for false imprisonment is barred because "the statute of limitations for a false arrest cause of action is one year." (Dkt. 5-4 at 3). However, Plaintiff has not brought a claim for false arrest. Rather, he has attempted to assert a claim under 42 U.S.C. § 1983 alleging that he was falsely arrested in derogation of his constitutional rights. The statute of limitations for a § 1983 claim brought in New York is three years. *Capo v. Cnty. of Steuben*, No. 11-CV-6447-CJS, 2012 WL 777487, at *5 (W.D.N.Y. Mar. 8, 2012) (citing *Owens v. Okure*, 488 U.S. 235, 251 (1989)).

Here, the false arrest purportedly occurred in October 2009, and the complaint was filed on February 24, 2012, well within the three-year limitations period. Therefore, Plaintiff's claims are not barred on statute of limitations grounds.

## III.   Prosecutorial Immunity

Defendants Yates County District Attorney Jason Cook ("D.A. Cook") and Yates County Assistant District Attorney Adrienne Muia ("A.D.A. Muia") argue that they are entitled to absolute immunity with regard to their involvement in Plaintiff's prosecution. (Dkt. 5-4 at 6-7). In opposition, Plaintiff argues that D.A. Cook and A.D.A. Muia acted outside the scope of their prosecutorial duties and therefore are not entitled to immunity. (Dkt. 10 at 20-22).

A prosecutor is entitled to absolute immunity for performing prosecutorial activities that are "'intimately associated with the judicial phase of the criminal process.'" *Hill v. City of N.Y.*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "[G]enerally only (a) the prosecutor's decisions with regard to whether or not to institute a prosecution and (b) his performance of his litigation-related duties are given the shield of absolute immunity. Most other activities are characterized as administrative or investigative and, thus, merit less protection." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) (citations and quotation marks omitted).

In *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), the United States Supreme Court reaffirmed the following:

> acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Id*. at 273. The *Buckley* Court distinguished between "the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand" and explained that a prosecutor is absolutely immune while performing the former function but not if performing the latter function. *Id*.

Here, the allegations in the complaint relate to the District Attorney's office's prosecutorial tasks in preparing for trial, as opposed to investigative tasks undertaken

prior to the decision to charge Plaintiff.   Plaintiff alleges that the District Attorney's office ignored medical evidence received in January 2011, that purportedly demonstrated that Plaintiff could not have committed the assault on Barry (Dkt. 1 at ¶¶ 50-53), and further that it relied upon allegedly fabricated photographs produced in February 2011, in its prosecution of Plaintiff (*id.* at ¶¶ 54-57).   In essence, Plaintiff complains that months after the grand jury returned its indictment, and just one or two months prior to the trial, the District Attorney's office "continued to prosecute Plaintiff despite the fact that no probable cause existed for the continued prosecution." (*Id.* at ¶ 57).   Plainly, these allegations relate to prosecutorial functions that are "'intimately associated with the judicial phase of the criminal process.'" *Hill*, 45 F.3d at 660-61.   Reviewing evidence and determining whether to continue a prosecution are essential functions of a prosecutor. *See Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) ("[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate.").

Moreover, Plaintiff's allegations against D.A. Cook relate to his supervision and training of A.D.A. Muia.   (Dkt. 1 at ¶¶ 75, 85).   There is no factual allegation that he was personally involved in the prosecution of Plaintiff beyond his supervisory capacity.   "It is well established . . . that supervision of an Assistant District Attorney by a District Attorney is a legal function, entitled to absolute immunity." *Galliotti v. Green*, No. 07-CV-6601, 2011 WL 2938449, at *5 (W.D.N.Y. July 19, 2011) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009)).

Based on the foregoing, D.A. Cook and A.D.A. Muia are entitled to absolute immunity, and the claims against them are dismissed in their entirety.

## IV. Plaintiff's § 1983 Claim for False Arrest, False Imprisonment, and Malicious Prosecution

Plaintiff's first cause of action alleges that Defendants violated his Fourth and Fourteenth Amendment rights by falsely arresting, falsely imprisoning, and maliciously prosecuting him. (Dkt. 1 at ¶¶ 80-89).

Claims for malicious prosecution and false arrest/false imprisonment[2] may be brought pursuant to § 1983 because they implicate the Fourth Amendment's protection of an individual's liberty interest with respect to criminal prosecutions. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995); *Dasher v. N.Y.C. Police Dep't*, No. 94 CV 3847 (SJ), 1999 WL 184118, at *2 n. 3 (E.D.N.Y. Mar. 18, 1999); *see also Cook v. Sheldon*, 41 F.3d 73, 77 (2d Cir. 1994) ("The tort of false arrest supports a claim against state police under section 1983 because it violates the Fourth Amendment."). Plaintiffs bringing such claims must meet the state law requirements for the underlying torts, *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010), and "show some deprivation of liberty consistent with the concept of 'seizure'" sufficient to implicate the Fourth Amendment. *Singer*, 63 F.3d at 116.

---

[2]  The standards regarding § 1983 claims for false arrest and false imprisonment are identical. *Hall v. Brown*, 489 F. Supp. 2d 166, 173 (N.D.N.Y. 2007) ("In terms of § 1983, [false arrest and false imprisonment] are treated as a single tort.").

### A.    Malicious Prosecution

"Under New York law, '[t]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice.' Liability for the tort of malicious prosecution also gives rise to liability under 42 U.S.C. § 1983." *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of N.Y.*, 60 N.Y.2d 78, 82 (1983)).

Plaintiff has adequately pled the first two elements of a claim for malicious prosecution. The complaint alleges that Plaintiff was charged criminally and that he was found not guilty of the charges against him.[3]  (Dkt. 1 at ¶¶ 45, 69).

However, as to the third element of a claim for malicious prosecution, the complaint fails to allege facts that, taken as true, establish a lack of probable cause.[4]  It is well-established that the existence of the grand jury indictment creates a presumption of probable cause. *Savino*, 331 F.3d at 72; *Manganiello*, 612 F.3d at 161-62.  Plaintiff may

---

[3]    The complaint actually alleges: "On March 1, 2011, Claimant was found not guilty on both counts and the charges were dismissed in his favor." (Dkt. 1 at ¶ 69). Presumably the reference to "claimant" is meant to be "plaintiff."

[4]    The complaint also lacks sufficient factual allegations to support any claim that Plaintiff's prosecution was motivated by malice. A showing of malice requires "'that the defendant . . . commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978)); *see also Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) ("The element of malice implicates an evil or unlawful purpose."). *See Nieves v. Cnty. of Monroe*, 761 F. Supp. 2d 48, 52-53 (W.D.N.Y. 2011) (dismissing malicious prosecution claim in part because "plaintiff . . . failed to plead the malice that is a cornerstone and requirement of pleading, and proving, a malicious prosecution claim. Conclusory or speculative allegations are insufficient: plaintiff must *specifically* allege that the named defendants acted with malice.") (emphasis in original).

rebut that presumption "*only* . . . by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino*, 331 F.3d at 72-73 (quoting *Colon*, 60 N.Y.2d at 83) (emphasis in original).

Most of the allegations in the complaint concerning conduct forming the basis for a malicious prosecution claim relate to the alleged actions on the part of the District Attorney's office, and as discussed above, those defendants are entitled to absolute immunity.  Plaintiff does make the conclusory allegation that Investigator Christensen "assisted in the fabrication of grand jury testimony against Plaintiff." (Dkt. 1 at ¶ 107). The complaint contains no factual allegations in support of this claim; instead, the facts as alleged in the complaint tend to support the opposite conclusion.   Plaintiff alleges that Investigator Christensen testified before the grand jury that he had spoken to Barry and that Barry had "explained . . . the circumstances that occurred." (Dkt. 1 at ¶ 46).  Plaintiff further alleges that Investigator Christensen testified before the grand jury about two bruises on Barry's leg, but he did not mention the broken arm that Barry allegedly later claimed was caused by Plaintiff. (*Id.* at ¶ 47).  Plaintiff further alleges that Barry testified before the grand jury that Plaintiff "came running out of his property . . . with a baseball bat in his hands." (*Id.* at ¶ 48).

Thus, pursuant to Plaintiff's factual allegations, Investigator Christensen did not fabricate testimony, but rather he purportedly testified about the circumstances that Barry claimed occurred.  In other words, the only allegedly fabricated testimony identified by Plaintiff is Barry's claim that Plaintiff came running out of his property with a baseball

bat in his hands.[5]  However, the complaint makes it clear that it was Barry who made this allegation from the very start.  (*See* Dkt.  1 at ¶¶ 28-30).  Plaintiff makes no attempt to explain how Investigator Christensen could have assisted in the fabrication of the very testimony that initiated the investigation into Plaintiff.   Additionally, the complaint does not allege that Lieutenant Sotir played any role in the prosecution of Plaintiff.

Plaintiff's allegations, accepted as true, might support the conclusion that Investigator Christensen failed to thoroughly investigate the claims against Plaintiff. Indeed, that is the crux of Plaintiff's complaint, referring to Investigator Christensen's investigation as "inadequate," "inept" and "negligent."   (Dkt. 1 at ¶¶ 28, 36, 81). However, "[an] alleged failure to conduct further investigation or apply all procedures that could have been followed does not amount to fraud, bad faith or the suppression of evidence and is insufficient to overcome the presumption [of probable cause]." *Gil v. Cnty. of Suffolk*, 590 F. Supp. 2d 360, 369-70 (E.D.N.Y. 2008) (conclusory and speculative allegations that police officer "falsely testified and misled the grand jury" were insufficient to rebut the presumption of probable cause).

District courts have not hesitated to dismiss malicious prosecution claims that fail to rebut the presumption of probable cause that arises from a grand jury indictment.  *See,*

---

[5]      There is no indication in the complaint that Investigator Christensen's own testimony was false.  Moreover, the United States Supreme Court has held that "a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony.  In addition . . . this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution."  *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506, 182 L. Ed. 2d 593 (2012).  This rule applies equally to law enforcement witnesses (*id.*), and so Investigator Christensen is not subject to liability for any allegedly false testimony he presented to the grand jury.

*e.g., Nieves*, 761 F. Supp. 2d at 52  (plaintiff failed to rebut presumption because plaintiff did not allege misconduct by county defendants); *Sullivan v. City of N.Y.*, No. 10 CIV. 0038 (NRB), 2011 WL 3806006, at *5 (S.D.N.Y. Aug. 29, 2011) (allegations that defendants were provided with exculpatory evidence demonstrating plaintiff's innocence insufficient to overcome presumption where there were no allegations that "defendants deliberately falsified their statements in support of a grand jury indictment, had a collateral motive in pursuing plaintiff's prosecution, or otherwise acted in contravention of their duties"); *Cabble v. City of N.Y.*, No. 04 CV 9413 (LTS), 2009 WL 890098, at *3 (S.D.N.Y. Mar. 30, 2009) (allegations of perjury by civilian witnesses insufficient to overcome presumption where there were no facts alleged to support claim that prosecuting authorities were complicit in perjury); *Bradley v. Nolan,* 03 CV 1616 (GBD), 2007 WL 959160, at *3 (S.D.N.Y. Mar. 30, 2007) (conclusory allegations of conspiracy between civilian witness and police officers insufficient to overcome presumption); *see also Sclafani v. Spitzer*, 734 F. Supp. 2d 288, 301 (E.D.N.Y. 2010) (presumption of probable cause not overcome by "unsupported conclusory allegations" of false testimony in context of summary judgment). *Cf. Fox v. Cnty. of Yates*, No. 10-CV-6020, 2010 WL 4616665, at *8 (W.D.N.Y. Nov. 12, 2010) (plaintiff pleaded facts sufficient to overcome presumption where complaint specifically alleged that law enforcement officers had misrepresented overtime procedures to the grand jury, had deliberately withheld an exculpatory electronic recording, and had made false statements to the grand jury regarding a written statement that plaintiff refused to sign).

Here, Plaintiff pleads no facts to support a plausible conclusion that the grand jury indictment was obtained through fraud, perjury, the suppression of evidence, or other police conduct undertaken in bad faith.  Plaintiff's conclusory and speculative allegations cannot overcome the presumption of probable cause arising from the grand jury indictment.  Plaintiff has therefore failed to plead an essential element of a claim for malicious prosecution.

### B.    False Arrest/False Imprisonment

"To state a claim for false arrest under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.' As with malicious prosecution, liability for false arrest also gives rise to liability under 42 U.S.C. § 1983." *Savino*, 331 F.3d at 75 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

As a threshold matter, only those events occurring pre-arraignment are properly considered part of Plaintiff's false arrest/false imprisonment claim, as opposed to his malicious prosecution claim.  As explained by the United States Supreme Court, a false arrest or false imprisonment claim "consists of detention without legal process. . . ." *Wallace v. Kato*, 549 U.S. 384, 389 (2007).  As a result, the false arrest or false imprisonment ends once the defendant is arraigned and subject to legal process, and thereafter any claim of unlawful detention forms part of the entirely separate tort of malicious prosecution. *Id.* at 389-390. "'If there is a false arrest claim, damages for that claim cover the time for detention up until issuance of process or arraignment, but not

- 15 -

more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.'" *Id.* at 390 (citation omitted); *see also Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006).

Here, Plaintiff alleges that his wife was told by Investigator Christensen that Plaintiff should appear in the Middlesex Town Court and he would be "ROR" (apparently referencing that he would be released on his own recognizance). (Dkt. 1 at ¶ 39). There are no allegations that Plaintiff was issued a summons or appearance ticket, or that he was arrested or detained in any manner.[6] Plaintiff further alleges that he appeared in Middlesex Town Court and he was charged with a misdemeanor and a temporary order of protection was issued. (*Id.* at ¶¶ 40-41). Plaintiff alleges that he subsequently appeared in the Potter Town Court, whereupon he pleaded not guilty and a jury trial was scheduled. (*Id.* at ¶¶ 42-43). Plaintiff alleges that the trial date was subsequently changed, and then cancelled, and he was indicted by a grand jury on an unspecified date in 2010. (*Id.* at ¶¶ 44-45).

At best, it would appear that Plaintiff is basing his false arrest/false imprisonment claim upon Investigator Christensen's request to his wife that Plaintiff appear in a local town justice court. Plaintiff does not even allege that he was arrested by Investigator Christensen or that he was issued any type of summons or appearance ticket compelling his appearance in the local town justice court. An appearance in a local criminal court,

---

[6]     Plaintiff alleges in paragraph 77 of his complaint that he was "falsely arrested and imprisoned for Assault," but there are no facts in the complaint to support this conclusory allegation.

even when required pursuant to a criminal summons, does not amount to confinement that will support a false arrest claim. *Nadeau v. La Pointe*, 272 A.D.2d 769, 771 (3d Dep't 2000); *see also Bissinger v. City of N.Y.*, No. 06 CIV. 2325 (WHP), 2007 WL 2826756, at *8 (S.D.N.Y. Sept. 24, 2007) ("A claim for false arrest must be premised on an actual arrest."); *Porat v. Lincoln Towers Cmty. Ass'n*, No. 04 CIV. 3199 (LAP), 2005 WL 646093, at *4 (S.D.N.Y. Mar. 21, 2005), *aff'd*, 464 F.3d 274 (2d Cir. 2006) (dismissing false arrest and imprisonment claim where plaintiff alleged he was issued a summons but was not arrested). The heart of a false arrest claim is a being taken into physical custody. *Reinhart v. Jakubowski*, 239 A.D.2d 765, 766 (3d Dep't 1997) (false arrest claim dismissed because plaintiff was issued a criminal summons and charged with unauthorized use of a motor vehicle in the third degree, but was "never taken into actual custody . . . nor subjected to other police intrusion of such magnitude that her liberty of movement was significantly interrupted . . ."); *see also Broughton v. State*, 37 N.Y.2d 451, 456 (1975) ("The action for false imprisonment is derived from the ancient common-law action of trespass and protects the personal interest of freedom from restraint of movement."). Here, there are no allegations supporting any claim that Plaintiff was taken into physical custody or somehow unlawfully detained.

Even if the Court were to consider the misdemeanor charges that were filed against Plaintiff as somehow forming part of the false arrest/false imprisonment claim (as opposed to conduct occurring after the initiation of legal process and therefore, more properly being considered as part of a malicious prosecution claim), merely being charged with a crime, without more, does not restrict an individual's liberty in a manner

that constitutes an arrest or imprisonment. *See, e.g., Nadeau*, 272 A.D.2d at 770-771 (appearing in local criminal court and being charged with misdemeanor did not amount to confinement sufficient to support false arrest claim).

Similarly, even if the issuance of a temporary order of protection were part of a false arrest/false imprisonment claim as opposed to a malicious prosecution claim, Plaintiff's allegations concerning the temporary order of protection, without more, do not establish that Plaintiff's freedom of movement was improperly restricted by the Defendants. Although the language of the complaint is ambiguous, the Court will assume for purposes of this motion that the order of protection was issued against Plaintiff. However, the complaint contains no information about the content of the order of protection, what role the Defendants played in its issuance, or what restrictions it may or may not have placed on Plaintiff. Nor does the complaint indicate how long this "temporary" order of protection was in place. An order of protection may take many forms and even accepting as true the allegation that Plaintiff was the subject of a temporary order of protection, the complaint does not contain facts plausibly alleging that Plaintiff was confined or detained as is required to state a claim for false arrest and/or false imprisonment.

Additionally, to the extent Plaintiff bases a false arrest/false imprisonment claim on the allegation that he was required to attend court proceedings, the claim fails to allege a deprivation of liberty rising to the constitutional level. A "pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure." *Burg v. Gosselin*, 591 F.3d 95, 101 (2d Cir. 2010). *See, e.g.,*

- 18 -

*Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) (finding no Fourth Amendment seizure where plaintiff was not arrested, but rather voluntarily appeared in local criminal court where she was charged by misdemeanor complaint and released on her own recognizance on the condition that she obtain permission from the court before leaving the state of California and appear in court at all times and places ordered).

As a result, Plaintiff has failed to plead a viable claim for false arrest or false imprisonment under § 1983 and his first cause of action must be dismissed in its entirety.

### V.    Plaintiff's Claim for Supervisory Liability as to Sheriff Spike

Plaintiff's second cause of action alleges that Defendant Yates County Sheriff Ronald Spike is liable under § 1983 for his supervision of Investigator Christensen and Lieutenant Sotir. (Dkt. 1 at ¶¶ 90-94). Defendants argue that this cause of action must be dismissed because the Complaint fails to allege facts that support the claim that Sheriff Spike failed to properly train or supervise his subordinates. (Dkt. 5-4 at 3-4).

As a threshold matter, where a plaintiff "has not established any underlying constitutional violation, [plaintiff] cannot state a claim for § 1983 supervisory liability." *Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011); *see also Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation."). As discussed above, Plaintiff has failed to properly state a claim for a constitutional deprivation, and as such, there is no basis for supervisory liability as to Sherriff Spike.

Even assuming Plaintiff had properly stated an underlying § 1983 claim, a defendant must have been personally involved in a constitutional deprivation to be held

liable under § 1983. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). There are many ways in which a supervisory official may be deemed to have been personally involved:

> A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Id.* at 323-24 (internal citations omitted). However, a "'plaintiff cannot base liability solely on [the defendant's] supervisory capacity or the fact that he held the highest position of authority' within the relevant governmental agency or department." *Houghton v. Cardone*, 295 F. Supp. 2d 268, 276 (W.D.N.Y. 2003) (quoting *Burgess v. Morse*, 259 F. Supp. 2d 240, 248 (W.D.N.Y. 2003)). "In other words, the conclusory assertion that a supervisory official was personally involved in the deprivation of constitutional rights, without supporting factual allegations, is not sufficient to state a claim under § 1983." *Roberites v. Huff*, No. 11-CV-521SC, 2012 WL 1113479, at *6 (W.D.N.Y. Mar. 30, 2012).

In this case, Plaintiff alleges that Sheriff Spike "was personally involved in the deprivation of Plaintiff's constitutional rights as he acted with gross negligence, recklessness, and/or deliberate indifference to the constitutional rights of citizens by failing to provide adequate training, supervision, and discipline of the Defendants Inv. Christensen and Lt. Sotir. . . ." (Dkt. 1 at ¶ 92). There are no facts alleged to support this conclusory allegation. *See Houghton*, 295 F. Supp. 2d at 276.

- 20 -

As a result of the above reasons, Plaintiff's second cause of action is dismissed.

**VI.   Plaintiff's § 1983 Claim for Deprivation of Liberty without Due Process of Law**

Plaintiff's third cause of action is purportedly a § 1983 claim for violation of his substantive due process rights under the Fourteenth Amendment.  (Dkt. 1 at ¶¶ 95-100). It is well-established that "a claim of malicious prosecution may not be brought as a substantive due process claim" because "the Fourth Amendment provides the source for a § 1983 claim premised on a person's arrest." *Singer*, 63 F.3d at 115 (citing *Albright v. Oliver*, 510 U.S. 266 (1994)); *see also Snow v. Vill. of Chatham*, 84 F. Supp. 2d 322, 327 (N.D.N.Y. 2000) ("Constitutional claims arising out of a deprivation of liberty must be examined under Fourth Amendment standards, not due process standards under the Fifth and Fourteenth Amendments.").

Plaintiff's claims arise out of his alleged false arrest and prosecution.  It is the Fourth Amendment and not the Fourteenth Amendment that provides the source of any § 1983 claim.  The third cause of action is therefore dismissed in its entirety.

**VII.   Plaintiff's *Monell* Claim Against Yates County**

Plaintiff's fourth cause of action seeks to hold Yates County liable for the purported constitutional violations of its officials pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  (Dkt. 1 at ¶¶ 101-103).  Defendants argue that Plaintiff has failed to state a claim for *Monell* liability and that his *Monell* claim is barred by the existence of probable cause.  (Dkt. 5-4 at 5).  In opposition, Plaintiff argues that the allegations in the Complaint are sufficient to establish that the purported

constitutional violations occurred pursuant to a municipal custom or policy. (Dkt. 10 at 17-18).

A plaintiff cannot allege a *Monell* claim where he has not alleged a valid underlying constitutional deprivation. *Johnson v. City of N.Y.*, 551 F. App'x 14, 15 (2d Cir. 2014) (citing *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986)). Plaintiff has not pled a valid underlying constitutional deprivation in this case, and so his *Monell* claim must be dismissed on this ground.

Furthermore, under *Monell*, a municipal entity may be held liable under § 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. at 694-95. "To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)). "'Mere "boilerplate" assertions that a municipality has such a custom or policy, which resulted in a deprivation of the plaintiff's rights, do not rise to the level of plausibility.'" *Roberites*, 2012 WL 1113479, at *7 (quoting *Simms v. City of N.Y.*, No. 10 CV 3420(NGG)(RML), 2011 WL 4344215, at *2 (E.D.N.Y. May 19, 2011)).

Here, even if there were underlying constitutional claims that Plaintiff could pursue, he has failed to allege facts to support a constitutional violation caused by a

municipal policy or custom.  Plaintiff's allegations in this regard are just boilerplate and conclusory.  (Dkt. 1 at ¶¶ 70-75).  As a result, Plaintiff's fourth cause of action is dismissed.

## VIII.  Plaintiff's Claim for First Amendment Retaliation

Plaintiff's fifth cause of action is for First Amendment retaliation by Investigator Christensen.  Plaintiff alleges that Investigator Christensen assisted in the fabrication of false grand jury testimony in retaliation for Plaintiff's complaint to Lieutenant Sotir. (Dkt. 1 at ¶ 107).

In order to prevail on a First Amendment retaliation claim, a plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by the exercise of that right; and (3) defendants' actions effectively chilled the exercise of that right.  *See Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  Generally, citizens have a First Amendment interest in making allegations of wrongdoing against law enforcement.  *See id*.  Defendants do not dispute this first element.

Instead, Defendants focus their argument on the second element of a First Amendment retaliation claim.  It is well-established in this Circuit that for purposes of a First Amendment retaliation claim against a law enforcement officer, "if the officer either had probable cause or was qualifiedly immune from subsequent suit (due to an objectively reasonable belief that he had probable cause), then [the Court] will not examine the officer's underlying motive in arresting and charging the plaintiff." *Singer*, 63 F.3d at 120; *see also Reichle v. Howards*, 132 S. Ct. 2088, 2094, 182 L. Ed. 2d 985

(2012) ("[A] plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause."); *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) ("[The existence of probable cause] will . . . defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence her.").   In short, "[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause," even if that prosecution "is in reality an unsuccessful attempt to deter or silence criticism of the government." *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992).

Here, as discussed above, Plaintiff has failed to allege facts sufficient to overcome the rebuttable presumption of probable cause arising from the grand jury's indictment. Moreover, Plaintiff has failed to allege any facts tending to support his conclusory allegation that Investigator Christensen assisted in the fabrication of grand jury testimony against Plaintiff or that Investigator Christensen sought to retaliate against Plaintiff. Notably, Plaintiff does not even allege that Lieutenant Sotir informed Investigator Christensen that Plaintiff had made a complaint; Plaintiff alleges only that Lieutenant Sotir told Plaintiff that he would look into "what was going on." (Dkt. 1 at ¶ 37). The facts as set forth in the complaint are therefore inadequate to establish the second element of a claim for First Amendment retaliation.

Plaintiff also has not adequately alleged that his speech was actually chilled by Investigator Christensen's alleged conduct. *See Curley*, 268 F.3d at 73. Plaintiff merely makes the conclusory action that his "rights to oppose governmental action have been

- 24 -

severely chilled" as a result of Investigator Christensen's alleged misconduct.  (Dkt. 1 at

¶ 108).  This is insufficient to satisfy the third element of a First Amendment retaliation

claim.  *See Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (Plaintiff's

"naked assertion of a chill does not suffice to defeat a Rule 12(b)(6) motion."); *Dorsett v.*

*Cnty. of Nassau,* No. 11-CV-5748 SJF GRB, 2013 WL 272796, at *4 (E.D.N.Y. Jan. 24,

2013) (dismissing First Amendment claim because "plaintiffs . . . failed to allege, other

than in conclusory fashion, that defendants' conduct chilled the prospective exercise of

their First Amendment rights").

## IX.    Plaintiff's Claims for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

Plaintiff's sixth and seventh causes of action are state law claims for intentional

infliction of emotional distress and negligent infliction of emotional distress by

Investigator Christensen.  (Dkt. 1 at ¶¶ 111-118).   Defendants argue that these causes of

action must be dismissed because probable cause existed for Plaintiff's prosecution and

because Plaintiff fails to allege compliance with New York General Municipal Law § 50-

i.  (Dkt. 5-4 at 6).

The Court need not reach this issue because, having found that Plaintiff fails to

state a viable federal claim, the Court declines to exercise jurisdiction over Plaintiff's

state law causes of action.  *See Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988)

("When all bases for federal jurisdiction have been eliminated from a case so that only

pendent state claims remain, the federal court should ordinarily dismiss the state

claims."); *see also Borden v. Blue Cross & Blue Shield of W. N.Y.*, 418 F. Supp. 2d 266,

274 (W.D.N.Y. 2006) ("The Second Circuit has advised that district courts should typically decline to exercise jurisdiction over state law claims where all federal claims have been eliminated before trial.").   The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's sixth and seventh causes of action and those claims are dismissed without prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) is granted and the complaint is dismissed in its entirety.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: June 27, 2014
     Rochester, New York